1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7
8
9
10
11
12
13

THE CONFEDERATED TRIBES
AND BANDS OF THE YAKAMA
NATION, *et al.*,

    Plaintiffs,

    v.

CHRISTINE GREGOIRE, Governor
of the State of Washington, *et al.*,

    Defendants.

NO.  CV-08-3056-RHW

**ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT**

14
15
16
17
18
19

    Before the Court are the parties' cross motions for summary judgment, as well as miscellaneous motions to strike certain arguments and proffered expert testimony. A hearing on these motions was held on October 6, 2009. For the reasons set forth below, the Court denies Plaintiffs' motion for summary judgment and grants Defendants' motion in part.

## I. BACKGROUND

20
21
22
23
24
25
26
27
28

    Plaintiffs challenge Defendants' imposition and anticipated enforcement of a cigarette tax on Yakama retailers' sales of cigarettes to non-members on the Yakama Reservation. Washington State's cigarette taxation scheme, codified at RCW 82.24 *et seq.*, will be discussed in more detail below. In brief, the State requires wholesalers to obtain tax stamps from banks and affix them to each pack of cigarettes they sell. Wholesalers must pay for the stamps in advance or post a bond and remit full payment within 30 days, after they collect the tax from retailers. Wholesalers are compensated to the tune of one penny per pack for their administrative costs in affixing the stamps. The idea is that retailers then pass on

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 1

1  the tax to the consumer by including it in the retail price.

2        On September 2, 2008, Plaintiffs brought five causes of action seeking the

3  following relief: (1) declaration that it is unlawful for Washington State

4  Department of Revenue to tax Indian-to-Indian sales of cigarettes; (2) declaration

5  that RCW 82.24 is unenforceable against the Yakama Nation and its members; (3)

6  declaration that acquisition and possession of unstamped cigarettes is not

7  prohibited by RCW 82.24 and therefore not contraband; (4) declaration that it is

8  unlawful for Washington State to prohibit the Yakama Nation from issuing its own

9  cigarette tax stamp; and (5) declaration that Washington State's conduct violates

10 prohibition against ex post facto laws.

11       This current litigation is part of a long-standing dispute between the parties

12 that has already once worked its way to the highest federal court. In 1980, the U.S.

13 Supreme Court considered the challenges of several Indian tribes, including the

14 Yakama Nation, to Washington State's cigarette taxation scheme. *Washington v.*

15 *Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134 (1980). The

16 Court held that the tax was valid and may be imposed on on-Reservation purchases

17 by non-members of the tribes, and that the detailed recordkeeping requirements

18 imposed on tribal retailers were valid as minimal burdens to aid in collecting and

19 enforcing the tax. *Id.* at 159-60. Further, the Court held that the State could seize

20 cigarettes off the Reservation to enforce its tax laws. *Id.* at 161.

21       Following this decision, the parties eventually reached an agreement in 2004

22 by which Defendants would not require or enforce cigarette taxes under RCW

23 84.24, so long as Plaintiffs administered their own tax on sales to non-members at

24 a rate equal to the Defendants' tax. As a result, Defendants would not require

25 cigarettes sold on the Reservation to bear Defendants' tax stamp, which otherwise

26 must be affixed to all cigarette packs sold in the state. The primary intent behind

27 this agreement was to preclude bargain-hunting, non-Yakamas from evading the

28 tax and thereby diminishing the State's revenue source. The agreement was meant

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 2

to last until 2012, but a dispute arose in February 2007 after the parties attempted to renegotiate their agreement in light of the Ninth Circuit's decision in *United States v. Smiskin*, 487 F.3d 1260 (9th Cir. 2007). Mediation failed, Defendants threatened enforcement, and the current litigation ensued.

In *Smiskin*, the Ninth Circuit held that the Yakama Treaty of 1855 provided the Yakamas a right to trade, implied by the explicitly reserved right to travel. The defendants in *Smiskin* were charged with violating the federal Contraband Cigarette Trafficking Act (CCTA), the relevant portion of which provides that "[i]t shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco." 18 U.S.C. § 2342(a). The State had required notification by the Yakamas before any shipments of unstamped cigarettes entered the Reservation. The Ninth Circuit determined that the unstamped cigarettes were "contraband" under state and federal law, but that the prenotification requirement was unenforceable because it created an "impermissible burden" on the Yakamas' right to travel and trade. 487 F.3d 1260 (citing *Cree v. Flores*, 157 F.3d 762 (9th Cir. 1998) ("*Cree II*")).

Despite *Smiskin*, the State remains convinced that the Supreme Court's decision in *Colville* protects the State's ability to impose taxes on sales of cigarettes to non-members on reservations. After the 2004 agreement broke down, Defendants sent letters to the wholesaler suppliers of the Yakama retailers declaring that the Yakama Nation stamp was contraband, as were all cigarettes not bearing the State's official tax stamp. Defendants also notified the wholesalers that no tax-exempt cigarettes could be sold until the Department of Revenue "established procedures concerning a tax exempt allocation for Yakama Nation tribal members." (Ct. Rec. 1, Ex. A-E). Defendants also threatened to pursue "criminal and/or civil sanctions" against any wholesaler selling unauthorized unstamped cigarettes. This litigation followed.

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 3

## II. PROCEDURAL HISTORY

This case was initially assigned to Judge Suko, who entered a temporary restraining order on Sept. 12, 2008. The Court had encouraged negotiation of a "standstill" agreement, but the parties were unable to compromise. (Ct. Rec. 30 at 2). The Court granted the temporary restraining order because it found  that "threats of criminal and civil sanctions effecting [sic] members of the Yakama Nation...continue to be in effect against Plaintiffs causing continued and immediate and irreparable harm." (Ct. Rec. 30 at 3). The temporary restraining order prohibited Defendants from threatening or taking enforcement action against (1) wholesalers who supply Indian retailers with unstamped cigarettes; (2) Plaintiffs or wholesalers who possess only the Yakama Nation tax stamp; (3) Plaintiffs for possessing or using the Yakama Nation tax stamp; and (4) threatening or enforcing RCW 82.24 et seq. The order also required Plaintiffs to apply the Yakama Nation cigarette tax stamps on all Reservation retailers' cigarettes. (Ct. Rec. 30, pp. 3-4).

## III. STANDARD OF REVIEW

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to (2) any material fact and that (3) the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "material fact" is determined by the substantive law regarding the legal elements of a claim. *Id.* at 248. If a fact will affect the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth, then it is material. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 4

the nonmoving party. *Liberty Lobby,* 477 U.S. at 248.

The moving party has the burden of showing the absence of a genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). In accord with Rules of Civil Procedure  56(e), a party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but... must set forth specific facts showing that there is a genuine issue for trial." *Id.* Summary judgment is appropriate only when the facts are fully developed and the issues clearly presented. *Anderson v. American Auto. Ass'n*, 454 F.2d 1240, 1242 (9th Cir. 1972). "Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Cross motions for summary judgement indicate a lack of disagreement on material facts. *See H. B. Zachry Co. v. O'Brien*, 378 F.2d 423 (10th Cir. 1967). The Ninth Circuit has held that "...when simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132 (9th Cir. 2001). Other circuits, like the Tenth, have held that "...cross motions for summary judgments do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties." *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, (10th Cir. 1997).

### IV. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs' motion for summary judgment does not mention three of the five claims advanced in their Complaint, but instead seeks two declarations: (1) that the

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 5

State's cigarette tax has no force or effect on Plaintiffs' on-Reservation sales because the legal incidence of the tax falls impermissibly on tribal retailers; and (2) that Defendants lack jurisdiction to enforce their cigarette tax laws on the Reservation. Finally, Plaintiffs' ask the Court to find the factual statements in their expert's report conclusively established for the purposes of trial, under Fed. R. Civ. P. 56(d).

### A. Legal Incidence

If the legal incidence of a state's tax falls on Indians, "it is unlawful absent a 'clear congressional authorization' to the contrary." *Coeur d'Alene Tribe of Idaho v. Hammond*, 384 F.3d 674, 681 (9th Cir. 2004) (quoting *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 458-59 (1995)). To determine where the legal incidence of a tax lies, courts "conduct a fair interpretation of the taxing statute as written and applied," in light of "the state statutory scheme, an assessment of its effects, and the total circumstances germane to incidence." *Hammond*, 384 F.3d at 681, 685 (internal quotation omitted). "The person or entity bearing the legal incidence of the tax is not necessarily the one bearing the economic burden," and "a party does not bear the legal incidence of the tax if it is merely a transmittal agent for the state tax collector." *Id.* at 681.

In *Colville*, the District Court found, "on the basis of its examination of state authorities," that because Washington State's cigarette tax could not be imposed on the tribal retailers as a matter of law, the "first taxable event is the use, consumption, or possession by the non-Indian purchaser." 447 U.S. at 142 n. 9. The Supreme Court did not itself analyze the question of legal incidence, but rather "accept[ed] the conclusion" of the District Court that the legal incidence of Washington State's cigarette tax falls on the consumer. *Id.* After considering federal, state, and tribal interests, the Court went on to hold that RCW 82.24 was not preempted by federal law (including the Yakama Treaty of 1855), and did not impermissibly infringe on tribal sovereignty. *Id.* at 155-57.

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT * 6**

In essence, Plaintiffs argue that *Colville* no longer controls due to changed legal and factual circumstances. First, Plaintiffs argue that RCW 82.24 itself has changed since *Colville* in the following ways: (1) retailers can no longer purchase and apply State tax stamps themselves; (2) retailers can no longer defer payment of the State tax until they collect the tax from the purchaser; (3) under the current statute, wholesalers are compensated for their administrative costs in affixing the State tax stamps, but retailers receive no compensation for their services as tax collectors; (4) under the current statute, retailers cannot receive tax refunds for unsold, stamped cigarettes, while wholesalers can; and (5) the tax rate has increased at least 500% since *Colville*, placing a much more onerous burden on retailers. Because of these changes, as well as changes in federal legal incidence jurisprudence (*viz.*, *Hammond* and similar cases), Plaintiffs argue that the Supreme Court's conclusion regarding legal incidence is no longer valid.

In response, Defendants first argue that *Colville* already conclusively decided the question of legal incidence and approved the application of RCW 82.24 in Indian country. Second, Defendants argue that none of the changes Plaintiffs identify in RCW 82.24 change the legal incidence of the tax. Defendants point to language in *Hammond* delineating between economic burden and legal incidence, and noting that mere transmitters of a tax do not bear the legal incidence.

An applicable decision of the U.S. Supreme Court controls under the principle of *stare decisis*, but the Supreme Court may depart from precedent where "[s]ignificantly changed circumstances ... make an older rule, defensible when formulated, inappropriate." *American Trucking Ass'n, Inc. v. Scheiner*, 483 U.S. 266, 302 (1987). Nonetheless, "if a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [lower courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 7

U.S. 203, 237 (1997) (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989)).[1]

The Court finds that none of the differences between the scheme examined in *Colville* and the current scheme are sufficient to change the conclusion that the legal incidence of the tax does not fall on Indian retailers. First, both schemes required Indian retailers to prepay for tax stamps.[2] The primary difference, and one the Court finds legally insignificant, is that in 1980, retailers prepaid for stamps and affixed the stamps themselves, while now they must purchase pre-stamped cigarettes. The Court also finds the fact that retailers could previously defer payment of the tax for 30 days insufficient to shift the legal incidence of the tax.

Second, as Defendants point out, the fact that wholesalers receive payment from the state for affixing the tax stamps is of no moment. Wholesalers receive this payment as compensation for their administrative costs associated with affixing the stamps. Because retailers no longer have the duty or option to affix the stamps themselves, they no longer have administrative costs that deserve compensation.

Third, the Court is not persuaded by Plaintiffs' argument that retailers are ineligible for refunds for unsold or destroyed cigarettes. The state's regulations specifically provide that such refunds are available to "any person." WAC 458-20-186(303). While the Department of Revenue initially directs retailers' refund requests to wholesalers (so that retailers may recoup the costs of not only the tax, but also the cigarettes themselves), nothing in state law or regulations prohibits retailers from obtaining a refund.

---

[1] Note that while Defendants argue the doctrine of *res judicata* defeats other arguments Plaintiffs advance, they do not argue that it applies to the issue of legal incidence.

[2] This is the case both when retailers purchase new cigarettes and when retailers pay a so-called "inventory tax" to the state on inventory in stock when the tax rate is increased.

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 8

1    Finally, the increase in the amount of the tax itself has no bearing on the

2    legal question of incidence because it has no effect on the burdens and

3    responsibilities of each party in the distribution chain. Yakama retailers must

4    prepay the tax and collect it from non-Yakama purchasers whether the tax is $.001

5    per pack or $1 per pack.

6    Accordingly, the Court finds that the legal incidence of the tax does not fall

7    on Indian retailers, and denies that portion of Plaintiffs' motion.

8    ### B. The State's Authority to Enforce RCW 82.24 in Indian Country

9    Plaintiffs advance a secondary argument in their motion for summary

10   judgment: that the State has no authority to enter the Yakama Reservation to

11   enforce any of the requirements imposed by RCW 82.24. Defendants vigorously

12   dispute that proposition, but also argue that any claims related to enforcement are

13   not yet ripe.

14   "A claim is not ripe for adjudication if it rests upon contingent future events

15   that may not occur as anticipated, or indeed may not occur at all." *Texas v. United*

16   *States*, 523 U.S. 296, 300 (1998) (internal quotation omitted). Defendants point to

17   *Colville*'s refusal to rule on the State's argument that it had the authority to act on

18   the Reservation, noting that "[t]he record does not disclose that the State has ever

19   entered the reservations to seize cigarettes because of the Tribes' failure to collect

20   the taxes due on sales to nonmembers, or ever threatened to do so except in papers

21   filed in this litigation." 447 U.S. at 162. Plaintiffs argue that the State's threats to

22   take on-Reservation enforcement action are real and imminent, and that "[o]ne

23   does not have to await the consummation of threatened injury to obtain preventive

24   relief. If the injury is certainly impending, that is enough." *Pacific Gas and Elec.*

25   *Co. v. State Energy Resources Conservation & Development Comm'n*, 461 U.S.

26   190, 201 (1983) ("*PG&E*").

27   The record indicates that after the 2004 agreement broke down, the State

28   Department of Revenue sent letters to the Yakama Nation, its counsel, and

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 9

cigarette wholesalers announcing the termination of the agreement and demanding compliance with RCW 82.24. (Ct. Rec. 1, Exhibits A-E). The letter to the Yakama Nation stated: "One outcome of termination is that the Yakama smokeshops will be subject to enforcement action. As the State evaluates its approach under the law, we will advise you of our intentions so that you and your members are fully aware of the risks." (*Id.*, Ex. A). A letter to a wholesaler in White Swan, Washington, stated: "A wholesaler selling unstamped cigarettes to any entity or person unauthorized to possess them will be subject to criminal and/or civil sanctions." (*Id.*, Ex. E). The record also includes a "Matrix of Compliance and Enforcement Strategies for Cigarette Sales on the Yakama Nation" (Ct. Rec. 102-9, Plaintiffs' Statement of Facts, Ex. F, pp. 432-34), which Defendants created after the 2004 agreement was terminated. According to Plaintiffs' own Statement of Facts, "the Matrix does not list any enforcement activities that would take place on the Yakama Reservation." (Ct. Rec. 102, p. 17, ¶ 49). Plaintiffs also point to Defendants' admissions during discovery that they have enforced RCW 82.24 off of the Reservation, and Defendants' articulated position that they have the authority and intent to do so on the Reservation as well. (Ct. Rec. 141, Plaintiffs' Reply Memorandum, p. 18).

On this record, the Court cannot conclude that any enforcement actions on the Yakama Reservation are "certainly impending." *PG&E*, 461 U.S. at 201. The record indicates only that Defendants believe they have the authority to enforce RCW 82.24's requirements on the Reservation, that they will continue to evaluate their legal options, and that they will notify the Yakama Nation of their intentions prior to acting. If Defendants had already issued such a notification announcing a specific enforcement action, the Court would have a context within which to apply the law and determine the parties' rights. Without the benefit of such a context, the Court will decline to rule on this jurisdictional issue. This portion of Plaintiffs' motion is therefore denied.

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 10

### C. Dr. Walker's Report

Plaintiffs submitted a report of Deward Walker, Ph.D., (Ct. Rec. 102-2), an anthropologist Plaintiffs retained to research the meaning and context of the Yakama Treaty's reserved right to travel. Plaintiffs argue that "Dr. Walker renders opinions and conclusions... which this Court should deem established for this action" under Fed. R. Civ. P. 56(d) because they "have gone wholly unrebutted, undisputed, and are not contradicted." (Plaintiffs' Memo. in Support, Ct. Rec. 101). Defendants argue that Dr. Walker's opinions do not constitute material facts, and that Plaintiffs' requested outcome would be a misuse of Rule 56(d).

While Dr. Walker may be able to provide expert opinions eventually admissible at a trial in this matter, the Court agrees with Defendants that Dr. Walker's report does not constitute the kind of material facts with which Rule 56(d) is concerned. Moreover, Dr. Walker's opinion about the meaning of the right to travel at the time the treaty was signed has been rebutted – by Defendants' retained expert, historian Emily Greenwald, Ph.D. (*see* Greenwald Report, Ct. Rec. 102-8). Accordingly, the Court denies this portion of Plaintiffs' motion.

### D. Conclusion

The Court finds that the legal incidence of Defendants' cigarette taxation scheme does not fall impermissibly on Indian retailers, and that Plaintiffs' challenges to Defendants' authority to enforce that scheme in Indian country are not ripe. The Court also denies Plaintiffs' request to find their expert's opinions conclusively established for trial. Therefore, the Court denies Plaintiffs' motion in its entirety.

### V. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on each of Plaintiffs' five causes of action, which seek the following relief: (1) declaration that it is unlawful for Washington State Department of Revenue to tax Indian-to-Indian sales of cigarettes; (2) declaration that RCW 82.24 is unenforceable against the Yakama

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 11

1   Nation and its members; (3) declaration that the acquisition and possession of

2   unstamped cigarettes is not prohibited by RCW 82.24 and therefore not

3   contraband; (4) declaration that it is unlawful for Washington State to prohibit the

4   Yakama Nation from issuing its own cigarette tax stamp; and (5) declaration that

5   Washington State's conduct violates prohibition against ex post facto laws.

6        The Court finds that Plaintiffs have abandoned their fifth cause of action

7   because they have failed to advance any argument in its support.

8        With respect to Plaintiffs' first cause of action, Defendants concede that they

9   have no authority to tax Yakama retailers' sales of cigarettes to other Yakamas.

10  However, the *Colville* decision draws a distinction between member Indians and

11  non-member Indians, holding that tribal retailers must collect the state's tax on

12  purchases of cigarettes by the latter group. 447 U.S. 161.[3] Therefore, if the Court

13  finds that the tax is otherwise enforceable, as discussed below, Defendants would

14  be entitled to partial summary judgment on this claim.

15       Defendants also concede that they have no authority to prohibit the Yakama

16  Nation from collecting a tribal tax on cigarettes sold to all purchasers, a right

17  expressly recognized in *Colville*. 447 U.S. 152-53. Defendants cite no authority

18  that would justify preventing the Tribe from issuing its own tax stamp to

19  accomplish this objective; Defendants quarrel only with the idea that the Yakama

20  tax stamp could substitute for the Washington State tax stamp. Therefore,

21  Defendants are not entitled to judgment as a matter of law on Plaintiffs' fourth

22  cause of action.

23       Accordingly, the Court will turn its attention to Plaintiffs' second and third

24  causes of action.

25            *A. Enforceability and Scope of RCW 82.24*

26       As discussed above, the Court finds that the legal incidence of the state's

27  ─────────────

28       [3] Plaintiffs' argument that this distinction is no longer tenable will be
     discussed below.

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 12

1  cigarette tax does not fall on Indian retailers. However, even if the legal incidence
2  of a state's tax falls on non-Indians, it may still be either preempted by federal law
3  or impermissibly infringe on tribal sovereignty, depending on the balance of
4  interests involved. *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 145
5  (1980).[4]

6      Plaintiffs' second cause of action alleges that the state's tax is unenforceable
7  against the Yakama Nation and its members because it is preempted by the
8  Yakama Treaty of 1855, and because the Yakama Nation is not "in the state" of
9  Washington. In their response to Defendants' motion, Plaintiffs also argue that the
10  state's tax impermissibly infringes on tribal sovereignty, a legal theory Defendants
11  move to strike.

12              1. Preemption of RCW 82.24 by the Yakama Treaty of 1855

13      Plaintiffs argue that the right to travel reserved in the Yakama Treaty of
14  1855 necessarily incorporates a right to bring goods to market free of restrictions,
15  and that the Treaty (as federal law) preempts the State's restrictive taxation
16  scheme. Defendants argue that the applicability of the Treaty was already
17  considered in *Colville*, and that Plaintiffs' claim is therefore barred under the
18  doctrine of *res judicata*. *See Costantini v. Trans World Airlines*, 681 F.2d 1199,
19  1201 (9th Cir. 1982) ("The doctrine of *res judicata* (or claim preclusion) bars all
20  grounds for recovery which could have been asserted, whether they were or not, in
21  a prior suit between the same parties on the same cause of action.") (internal
22  quotation omitted). Plaintiffs counter that changes to RCW 82.24 as well as the
23  *Smiskin* decision make *res judicata* inapplicable, citing *Massachusetts Sch. of Law
24  v. ABA*, 142 F.3d 26, 38 (1st Cir. 1998) ("*res judicata* will not attach if the claim
25  asserted in the second suit could not have been asserted in the first.")

26  ─────────────────
27  [4] Though *Bracker* was issued a few weeks after *Colville*, the parties appear
    to agree that *Colville* effectively, though not explicitly, conducted *Bracker*'s
28  interest balancing test.

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 13

Defendants have the better of the argument: *Colville* squarely holds that the Yakama Treaty of 1855 does not preempt RCW 82.24, even though the opinion does not explicitly address the Treaty's reserved right to travel. 447 U.S. at 156. *Smiskin* and *Cree II* interpreted that right based on extensive factual findings that were, of course, unavailable to the Supreme Court in 1980. Nonetheless, Plaintiffs' argument is based on the Yakamas' understanding of the right to travel since the time the Treaty was executed, an understanding that surely existed at the time *Colville* was decided and that could have been presented to the Court. It is only Plaintiffs' argument that has changed, not the claim itself, the Treaty's language, or the Tribe's understanding thereof.

Moreover, even if this claim was not barred by *res judicata*, there is no basis in the law or the record to extend *Smiskin*'s holding to invalidate the state's taxation scheme *in toto*, as Plaintiffs ask this Court to do. Beyond the prenotification requirement at issue in *Smiskin*, the detailed recordkeeping requirements Plaintiffs also challenge in their second cause of action were explicitly considered by the *Colville* court and held to be no more than "minimal burdens." 447 U.S. 160. As such, the Court cannot find that the Yakama Treaty preempts the state's taxation scheme as a whole.

## 2. "In the State"

Plaintiffs' second cause of action alleges that RCW 82.24 is unenforceable against the Yakama Nation and its members because the Reservation is not "in the state" as required by the language of the statute. Defendants argue that this is inconsistent with long-standing principles of federal law. Because Plaintiffs fail to address this argument in their own motion for summary judgment and in their memorandum in opposition to Defendants' motion, the Court finds that they have abandoned the argument.

## 3. Balance of Interests

A state's tax may be unenforceable against Indians if it impermissibly

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 14

infringes on tribal sovereignty, depending on a "particularized inquiry into the nature of the state, federal, and tribal interests at stake." *Bracker*, 448 U.S. at 145. In balancing the state and tribal interests at stake, *Colville* noted that the Tribes' primary interest was marketing its tax exemption to "non-Indians – residents of nearby communities who journey to the reservation especially to take advantage of the claimed tribal exemption." 447 U.S. at 145. The Court held that this interest must give way to the State's interest in raising revenues, because "Washington's taxes are reasonably designed to prevent the Tribes from marketing their tax exemption to nonmembers who do not receive significant tribal services and who would otherwise purchase their cigarettes outside the reservations." *Id.* at 157.

In their response to Defendants' motion for summary judgment, Plaintiffs argue that the factual assumptions underpinning these holdings no longer apply, because since 1980 the Yakama Reservation has become a bustling hub of commerce that draws nonmembers and nonresidents for many reasons besides the opportunity to purchase cheap cigarettes. For the same reason, Plaintiffs ask the Court to revisit *Colville*'s distinction between member Indian purchasers and non-member Indian purchasers. 447 U.S. 161.

Defendants move to strike this new legal theory, arguing that it was not disclosed in Plaintiffs' Complaint, during discovery, or even in Plaintiffs' own motion for summary judgment. Defendants argue that they have not had an opportunity to conduct the discovery necessary to dispute (or admit) the facts on which this new legal theory relies.

The Court agrees with Defendants and grants their motion to strike. The primary problem is that Plaintiffs' argument relies on facts that Defendants, at this stage of the litigation, are unable to challenge. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) (holding that allowing plaintiffs to proceed on a new legal theory not disclosed until the summary judgment stage, after the close of discovery, prejudices the defense and should not be considered). While the

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 15

Complaint contained some brief description of the current economy and culture of the Reservation, nothing in the detailed causes of action indicated that those brief descriptions were for any purpose other than background and context. It may be the case that the Yakama Reservation now draws nonresidents for many reasons beyond cheap cigarettes, but it is also possible that the smoke shops' business is still dominated by nonresidents who spend no more time on the Reservation than that necessary to purchase cigarettes. Defendants, unaware that Plaintiffs would seek to challenge this holding in *Colville*, had no reason to conduct the kind of discovery that could have turned up such facts.

Therefore, the Court grants the motion to strike and declines to consider this argument.

### 4. Designation of Unstamped Cigarettes as "Contraband"

Plaintiffs' third cause of action seeks a declaration that "the acquisition and possession of unstamped cigarettes is not contraband." Plaintiffs again fail to brief this cause of action, but presumably base their argument on *Smiskin*'s holding that a Yakama Indian's possession of unstamped cigarettes cannot be the basis for prosecution under the Contraband Cigarette Trafficking Act. 487 F.3d at 1272. As Defendants point out, Plaintiffs' claim is inconsistent with *Smiskin* itself, which, notwithstanding its holding, continues to describe unstamped cigarettes as "contraband." *Id.* at 1263. Moreover, since *Smiskin* the Ninth Circuit has explicitly held that unstamped cigarettes in the possession of a member of the Yakama Nation were "contraband." *United States v. Fiander*, 547 F.3d 1036, 1039 (2008). Therefore, Defendants are entitled to summary judgment on this cause of action.

### B. Conclusion

The Court finds that Defendants are entitled to summary judgment on Plaintiffs' second, third, and fifth causes of action. Defendants are entitled to partial summary judgment on Plaintiffs' first cause of action because it is not unlawful for Defendants to tax on-reservation sales of cigarettes by members of the

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 16

Yakama Nation to nonmember Indians. However, the Court denies in part Defendants' motion on Plaintiffs' first cause of action because Defendants have no authority to tax sales of cigarettes by members of the Yakama Nation to other members. The Court denies Defendants' motion for summary judgment on Plaintiffs' fourth cause of action because Defendants have no authority to prevent the Tribe from issuing its own tax stamp and collecting tribal taxes on cigarette sales.

## VI. FURTHER PROCEEDINGS

Following this Order, Plaintiffs' fourth cause of action and part of their first cause of action remain pending. Therefore, no later than February 4, 2010, the parties are directed to confer and file a joint status certificate outlining their positions on future proceedings and the resolution of this case.

Accordingly, **IT IS HEREBY ORDERED:**

1.     Defendants' Motion for Summary Judgment (Ct. Rec. 90) is **GRANTED in part** and **DENIED in part.**

2.     Plaintiffs' Motion to Strike Expert Report and to Exclude Testimony of Emily Greenwald (Ct. Rec. 95) is **DENIED as moot.**

3.     Plaintiffs' Motion for Summary Judgment (Ct. Rec. 99) is **DENIED.**

4.     Defendants' Motion to Strike Reports of Deward E. Walker, Jr., Ph.D. (Ct. Rec. 113) is **DENIED as moot.**

5.     Defendants' Motion to Strike in Part Memorandum in Opposition to Defendants' Motion for Summary Judgment (Ct. Rec. 145) is **GRANTED.**

6.     No later than **February 4, 2010,** the parties are directed to confer and file a joint status certificate outlining their positions on future proceedings and the resolution of this case.

///

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 17

1    **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

2    Order and forward copies to counsel.

3        **DATED** this 4th  day of January, 2010.

4

5

6                          *s/Robert H. Whaley*
                          ROBERT H. WHALEY
7                        United States District Judge

8

9

10   Q:\CIVIL\2008\Confederated Tribes\sj.ord.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** * 18